E-FILED
Monday, 08 September, 2025  04:03:19 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ERIC DRAKE** | § | **Case Number:** 25-CV-1375 |
| *Plaintiff* | § | |
| | § | **FILED** |
| **v.** | § | |
| | | **SEP - 8 2025** |
| **STATE FARM ATOMOBILE INSURANCE COMPANY, INC.** | | **CLERK OF COURT** |
| | | **U.S. DISTRICT COURT** |
| *Defendant* | | **CENTRAL DISTRICT OF ILLINOIS** |

### PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Eric Drake, files this Complaint against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, INC., ("State Farm" or "Defendant"), and in support thereof, states as follows:

### I. INTRODUCTION

1.    This action seeks to remedy the discriminatory and unlawful conduct of State Farm in its refusal to honor a binding verbal settlement agreement with Plaintiff, an African American. After forcing Plaintiff through a difficult and burdensome claims process, State Farm entered into a clear verbal settlement agreement, only to breach that agreement by shorting the payment by over $1,300.00. State Farm then compounded its misconduct by issuing a second, duplicative check that was ultimately returned for insufficient funds, creating further chaos and financial harm. This conduct, orchestrated and controlled from

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—1

State Farm's headquarters in Illinois, represents not only a breach of contract and fraud but also a violation of Plaintiff's federally protected civil rights.

## II. PARTIES

2.    Plaintiff, Eric Drake, is an individual and a citizen of the State of Georgia, residing in Texas temporarily. Plaintiff is an African American.

3.    Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, is an Illinois corporation with its principal place of business located at: One State Farm Plaza, Bloomington, Illinois 61710.

## III. JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) because Plaintiff's claims include a cause of action arising under U.S. laws, specifically 42 U.S.C. § 1981.

5.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they are so related to the federal question claim that they form part of the same case or controversy.

6.    Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.     This Court has personal jurisdiction over Defendant State Farm because State Farm's principal place of business is in Bloomington, Illinois, which is within this judicial district. As its home state, Illinois is the nerve center from which State Farm operates and directs its nationwide business activities, including the claims handling policies and final decisions at issue in this case.

8.     Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because Defendant State Farm resides in this district.

9.     Furthermore, venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred here. Specifically, the ultimate authority and final control over Plaintiff's claim and the subsequent mishandling of the settlement were directed by State Farm's senior management, including its Vice President of Claims, Mr. Wensley J. Herbert, who is located at State Farm's corporate headquarters in Bloomington, Illinois.

## IV. FACTUAL ALLEGATIONS

10.     This case arises from a motor vehicle accident that occurred in Texas on July 24, 2024. The accident was caused solely by the negligence of Frances-ann Abbas, a driver insured by State Farm.

11.     The at-fault driver's negligence caused property damage to Plaintiff's vehicle in an amount exceeding $6,500.00.

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—3

12. Plaintiff timely filed a claim against the at-fault driver's policy with State Farm.

13. From the outset, State Farm made the claims process extraordinarily difficult for Plaintiff. State Farm insisted that Plaintiff take his vehicle to a "State Farm-approved" body shop, limiting his choices and control over the repair process.

14. Throughout the claims process, State Farm made Plaintiff "jump through many hoops," creating unreasonable delays and administrative burdens not typically imposed on other claimants.

15. After a protracted negotiation, Plaintiff, acting *pro se*, reached a clear, definite, and binding verbal settlement agreement with an authorized representative of State Farm to resolve his property damage claim. The parties mutually agreed to the specific settlement amount of $7,717.19.

16. In purported execution of this verbal agreement, State Farm issued and mailed a check to Plaintiff.

17. Upon receiving the check, Plaintiff discovered that the check was issued for the amount of $6,389.55, which is $1,327.64 less than the amount verbally agreed upon by the parties.

18. Subsequently, and due to an error by State Farm, a second check was sent to Plaintiff. This second check was a duplicate of the first incorrect check,

also for $1,300.00 less than the agreed-upon settlement.

19.     Believing State Farm had mistakenly overpaid him by sending two checks, and still seeking to obtain the full settlement amount he was owed, Plaintiff acted in good faith to rectify the situation. He cashed both checks.

20.     From the proceeds of the second check, Plaintiff took the $1,327.64 that State Farm had wrongfully withheld from the settlement. He then obtained a Cashier's Check for the remaining balance of the second check's funds and sent it to State Farm to return the erroneous overpayment. *See* **Exhibit A**.

21.     In the interim, State Farm's second check was dishonored and returned for insufficient funds. State Farm, one of the largest insurance companies in the world, had issued a bad check.

22.     Upon learning that State Farm's second check was worthless, Plaintiff immediately requested his bank to stop payment on the Cashier's Check he had sent to State Farm.

23.     Plaintiff thereafter sought to return the entire amount of the second, invalid check to State Farm and to enforce the original settlement agreement for the full amount.

24.     During this ordeal, Plaintiff communicated with State Farm's Vice President of Claims, Mr. Wensley J. Herbert, in writing, which is located at State Farm's headquarters in Bloomington, Illinois. Mr. Herbert, as a senior executive,

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—5

exercised ultimate authority and control over the final disposition and handling of Plaintiff's claim and settlement dispute. *See* **Exhibit B**.

25.    The actions of State Farm, including but not limited to breaching the settlement agreement, creating undue claims hurdles, and issuing a check with insufficient funds, were taken in bad faith and were motivated, in whole or in part, by Plaintiff's race as an African American and a violation of 42 U.S.C. §1981.

26.    'But for' race, Plaintiff, Eric Drake would not have suffered the loss of a legally protected right.

27.    The Plaintiff had to cover the insufficient bad check funds. At this point the Plaintiff have a viable claim against State Farm under §1981, and on several other causes of action, some of which are state causes of action that the Plaintiff is respectfully requesting supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

### V. FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1981 – RACIAL DISCRIMINATION IN THE MAKING AND ENFORCING OF CONTRACTS

26.    Plaintiff incorporates by reference these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

27.    Defendant FGPS has engaged in pernicious, intentional racial discrimination in contracting, which is illegal under §1981. Section 1981 is broad,

covering "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

28. African Americans are of a protected class under §1981.

29. Plaintiff, Eric Drake is an African American.

30. 'But for' race, Plaintiff, Eric Drake, would not have suffered the loss of a legally protected right.

31. Plaintiff's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides and guarantees all persons within the jurisdiction of the United States have the same right "to make and enforce contracts ... as is enjoyed by white citizens." The right to "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

32. These laws entitle each person to equal opportunity and treatment and prohibit violation of making, enforcing, performance, modification and termination of contracts.

32. Defendant State Farm ignored the fact that its representatives had entered into a verbal agreement, hence, violating the contract established between the Plaintiff and State Farm—that also violated Section 1981 as pled herein.

28. Moreover, Defendant, through the actions of its employees violated

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—7

its contract with the Plaintiff because *performance*—the delivery of the amount agreed upon between the Plaintiff and Defendant, is part of the contract that the Plaintiff, which is the same service that white citizens expect, enjoy, and receive. But it's the very *performance* or service that Defendant State Farm through its employees refused to provide to the Plaintiff, Eric Drake, for no other reasons 'but for' Reverend Eric Drake's race, which is a violation of §1981.

28.    Providing service of issuing settlement checks for the correct amount that is agreed upon was part of Defendant State Farm's contractual obligation to Plaintiff.

28.    The verbal settlement agreement between Plaintiff and State Farm constituted a contract.

29.    Defendant State Farm, acting through its agents and employees, intentionally discriminated against Plaintiff on the basis of his race in the enforcement of this contract.

30.    State Farm's discriminatory conduct includes, but is not limited to: (a) refusing to honor the terms of the agreed-upon settlement contract by paying a lesser amount; (b) subjecting Plaintiff to a more burdensome and difficult claims process than that imposed on similarly situated white claimants; and (c) engaging in bad faith and irregular payment practices, such as issuing a bad check, that impaired Plaintiff's rights under the contract.

31.    As a direct and proximate result of State Farm's intentional and ra-

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—8

cially discriminatory conduct, Plaintiff has been denied the right to enforce his contract on equal terms with white citizens and has suffered damages, including economic loss, emotional distress, humiliation, and inconvenience.

32.    Defendant's actions were willful, wanton, malicious, and taken with reckless disregard for Plaintiff's federally protected rights, thereby entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

33.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

34.    Plaintiff and State Farm entered into a valid and enforceable verbal contract, whereby State Farm agreed to pay a specific sum in exchange for the full and final settlement of Plaintiff's property damage claim. There were no written settlement contracts between the Plaintiff and State Farm. The amount agreed to was a verbal or oral contract, which is enforceable under Illinois laws: *Baptist, Joseph v. City of Kankakee*, 481 F.3d 485 (7th Cir. 2007). When the Plaintiff cashed the first check there were no terminology on the back or front of the check expressing that the amount of the check was correct, nor did the back of the check contained any language that by cashing said check that it would prevent the Plaintiff from litigating to recover losses and other damages.

35.    All conditions precedent to the formation of the contract was met.

There was an offer, acceptance, and a meeting of the minds on all material terms.

36.     Plaintiff performed, or was ready, willing, and able to perform, all of his obligations under the verbal contract.

37.     Defendant State Farm breached the contract by failing to tender payment in the full, agreed-upon amount of $7,717,19,

38.     As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to the unpaid settlement balance of $1,327.64, as well as damages for discrimination based on Plaintiff's race, as pled herein and other consequential damages.

### THIRD CAUSE OF ACTION
### COMMON LAW FRAUD / INTENTIONAL MISREPRESENTATION

39.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

40.     Defendant State Farm, through its representative, made a false statement of material fact to Plaintiff, namely, that it would pay the full, agreed-upon settlement amount.

41.     At the time this representation was made, Defendant knew it was false or made it with reckless disregard for its truth or falsity. Defendant had no intention of paying the full agreed-upon amount. The subsequent issuance of a check for a lesser amount and a second, invalid check is evidence of this fraudulent intent.

42.    Defendant made the false representation with the intent to induce Plaintiff to rely upon it and agree to settle his claim.

43.    Plaintiff reasonably and justifiably relied on Defendant's misrepresentation in agreeing to the settlement and forbearing further action on his claim at that time.

44.    As a direct and proximate result of his reasonable reliance on the Defendant's fraudulent misrepresentation, Plaintiff has suffered damages.

45.    Defendant's conduct was willful, malicious, and intentional, warranting the imposition of punitive damages.

## FOURTH CAUSE OF ACTION
## VIOLATION OF ILLINOIS INSURANCE CODE, 215 ILCS 5/155

46.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

47.    The Illinois Insurance Code, 215 ILCS 5/155, provides for an award of attorney's fees and other costs against an insurer when its action or delay in settling a claim is unreasonable.

48.    Defendant's actions in handling Plaintiff's claim were dishonest and unreasonable. This conduct includes, but is not limited to, initially refusing to pay the agreed-upon settlement amount, delaying payment, shorting the payment, and issuing a check that was returned for insufficient funds.

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—11

49.    The totality of the circumstances demonstrates that Defendant's conduct was not the result of a *bona fide* dispute but was a willful refusal to deal fairly with Plaintiff.

50.    As a result of Defendant's deceitful and unreasonable conduct, Plaintiff was forced to file this lawsuit to recover the amount due to him under the settlement agreement and for other damages as alleged herein.

51.    Pursuant to 215 ILCS 5/155, Plaintiff is entitled to recover, in addition to the amount of the claim, reasonable attorney's fees, other costs, and a statutory penalty.

## VI. PLAINTIFFS' DAMAGES

50.    Defendant's employees, violation of the verbal/oral contract and intentional race discrimination, as pled herein, prohibited Plaintiff, Eric Drake, from receiving the amount of settlement he agreed to and thus the Defendant's actions violated the verbal contract with the Plaintiff, strictly on account of his race, African American—as white customers of Defendant State Farm enjoy—is the causation of Drake's damages under §1981. Plaintiff has demonstrated the causal connection, of the violation of his legally protected rights as pled herein.

50.    Each case of civil rights violations is different. The above cause of action is supported by clear and convincing audio evidence of the verbal contract, which was entered into by the Defendant and Plaintiff. These State Farm employ-

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—12

ees violated the contract with Plaintiff while they were acting in the scope of their employment.

50.    The Defendant ignored its own settlement agreement with the Plaintiff on account of Plaintiff's race, Black or African American. The question becomes apparent, how many other Black, Hispanic, or other races have the Defendant equally violated §1981 by cheating nonwhites out of their settlement agreements to the company's own unjust enrichment. Plaintiff is requesting this Honorable Court to stop to this type of discrimination and piracy. The Defendant have undoubtedly stolen thousands of dollars from other nonwhite individuals in the same manner—with the knowledge that the far majority of people that, the Defendant steals from them will not hold the Defendant accountable.

50.    As a direct and proximate result of the acts and omissions outlined above, Plaintiff has been severely damaged. Defendant's conduct as described herein has caused Plaintiff to suffer extreme emotional distress and mental anguish. Plaintiff seeks compensatory damages in an amount deemed sufficient by the trier of fact to compensate him for his damages, which includes past and future mental anguish, past and future pain and suffering, and past and future severe emotional distress.

50.    Plaintiff seeks other damages as pled herein.

50.    Plaintiff also seeks exemplary damages.

|  | Purpose | Basis of Calculation |
|---|---|---|
| **Actual Damages** | To compensate for the direct economic loss. | The amount deprived ($1,300 in this scenario). |
| **Compensatory Damages** | To compensate for non-economic harm like emotional distress and humiliation. | The severity of the emotional and psychological impact on the plaintiff. |
| **Punitive Damages** | To punish the defendant for malicious or reckless discrimination and deter future misconduct. | The reprehensibility of the defendant's conduct and their financial resources is not capped in § 1981 cases. |

## VII. DEMAND FOR JURY TRIAL

50.    Plaintiff Eric Drake hereby demands a trial by jury pursuant to the Seventh Amendment of the United States Constitution on the 42 U.S.C. §1981 damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for judgment, as follows:

1.    Plaintiff prays for compensatory, general and special damages from Defendant State Farm Automobile Insurance Company, according to proof at trial;

2.    Plaintiff prays for punitive damages based on oppression and malice, according to State Farm Automobile Insurance Company, Inc., net worth;

3.    Damages in an amount to be determined at trial, for emotional distress, humiliation, and inconvenience;

3.    Pre-judgment and post judgment interest (28 U.S.C. § 1961);

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—14

4.      Plaintiff prays for an award of all costs of this action, as permitted by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d);

5.      Plaintiff prays for other appropriate equitable relief to him as a protective class;

6.      Plaintiff Eric Drake prays for such other and further relief as the court deems just and proper, and;

7.      Plaintiff also request retention of jurisdiction by the Court until such time as the Court is satisfied that the Defendant have remedied the practices complained of herein and are determined to be in full compliance with the law.

Dated: September 5th, 2025

Respectfully Submitted,

*/s/Eric Drake*
Eric Drake
10455 North Central Expy
Suite 109
Dallas, Texas 75231
912-281-7100
Email address: directdrakeemail@gmail.com

PLAINTIFF'S ORIGINAL PETITION AGAINST STATE FARM—15

PRESS FIRMLY TO SEAL

FSC MIX Board FSC C116918

PAPER POUCH cycle.info

PRESS FIRM   Retail

U.S. POSTAGE PAID
PME
DALLAS, TX 75243
SEP 03, 2025

61602

RDC 07

$31.40

S2324M502316-7

PRIORITY MAIL EXPRESS®

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

EJ 957 114 702 US

FLAT RATE ENVELOPE

RATE ■ ANY WEIGHT



Schedule free Package Pickup, scan the QR code

USPS.COM/PICKUP

PS10001000006

EP13F October 2023
⊙D: 12 1/2 x 9 1/2

PAPER POUCH m2recycle.info

UNITED STATES POSTAL SERVICE®

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( )

10455 N. Central Expy
Ste 109
Dallas, Tx. 75231

**DELIVERY OPTIONS (Customer Use Only)**

☑ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
   *Refer to USPS.com® or local Post Office™ for availability.

BJC
9.6.25

TO: (PLEASE PRINT)   PHONE ( )

Honorable Shig Yasunaga
Clerk of Court
Central District of Illinois
305 U.S. Courthouse
100 N.E. Monroe St.
Peoria, IL 61602

ZIP + 4® (U.S. ADDRESSES ONLY)

6 1 6 0 2 - ___ ___ ___ ___

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

◀ PEEL FROM THIS CORNER

**PAYMENT BY ACCOUNT (if applicable)**

| USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No. |
|---|---|
| | 705 |

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day   ☐ 2-Day   ☐ Military   ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 75243 | 9.5.25 | $ 31 40 |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 9-3-25 | ☐ 6:00 PM | $ | $ |

| Time Accepted | | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| 2:41 | ☐ AM ☐ PM | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Total Postage & Fees |
|---|---|---|
| $ | $ | 31 40 |

| Weight | ☐ Flat Rate | Acceptance Employee Initials | $ |
|---|---|---|---|
| lbs. ozs. | | CF | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | | Employee Signature |
|---|---|---|---|
| | | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, MAY 2021   PSN 7690-02-000-9996

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments.